IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MARCO ANTONIO CORTES-GOMEZ (01),

                Defendant.

Case No. 16-40091-01-DDC

## MEMORANDUM AND ORDER

Defendant Marco Antonio Cortes-Gomez has filed a pro se[1] Motion for Compassionate Release (Doc. 136). The government has responded, opposing Mr. Cortes-Gomez's motion. Doc. 139. The court denies the motion. Mr. Cortes-Gomez also seeks relief under Amendment 821 to the United States Sentencing Guidelines. The court concludes it lacks jurisdiction over this Amendment 821 request, so it dismisses this part of the motion.

**I.    Background**

In December 2016, a jury convicted Mr. Cortes-Gomez of two counts for his involvement in a conspiracy to distribute methamphetamine. Doc. 38 (Verdict). When determining Mr. Cortes-Gomez's offense level under the Guidelines, the Presentence Investigation Report (PSR) suggested—and the court later applied—two enhancements: a four-point enhancement for serving as a leader of the criminal activity and a two-point enhancement for engaging in criminal

---

[1]     People in prison "who proceed pro se . . . are entitled to liberal construction of their filings[.]" *Toevs v. Reid*, 685 F.3d 903, 911 (10th Cir. 2012); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

conduct as his livelihood. Doc. 95 at 15 (Am. PSR ¶¶ 73, 75); *United States v. Cortes-Gomez*, 926 F.3d 699, 703 (10th Cir. 2019) (affirming application of enhancements). The PSR calculated a Guideline range of 240 months for Count 1, conspiracy to possess with intent to distribute methamphetamine, and life in prison for Count 2, attempted possession with intent to distribute 500 grams of more of methamphetamine. Doc. 95 at 20 (Am. PSR ¶ 110). The court varied below Mr. Cortes-Gomez's Guideline range to avoid an unwarranted sentencing disparity with Mr. Cortes-Gomez's coconspirators. *Cortes-Gomez*, 926 F.3d at 703. Ultimately, the court sentenced Mr. Cortes-Gomez to 240 months on Count 1 and 294 months on Count 2—with the two sentences to run concurrently. Doc. 104 at 2 (Judgment). As of this writing, Mr. Cortes-Gomez's projected release date is June 13, 2037. *See* Marco Antonio Cortes-Gomez (Reg. No. 27652-031), https://www.bop.gov/inmateloc/ (last visited Aug. 15, 2025).

Mr. Cortes-Gomez now has moved for a reduced sentence. The court begins its analysis with the governing legal standard.

## II.     Legal Standard

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed; but the rule of finality is subject to a few narrow exceptions.'" *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)). Compassionate release under 18 U.S.C. § 3582(c)(1) is one of those exceptions. The court may grant a defendant's motion for compassionate release only if it finds that (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the 18 U.S.C. § 3553(a) factors favor a reduced sentence. *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021). Another exception to the rule of finality is 18 U.S.C. § 3582(c)(2), which "authorizes a district court to reduce a sentence 'based on a sentencing range that has

subsequently been lowered by the Sentencing Commission.'" *United States v. Chavez-Meza*, 854 F.3d 655, 657 (10th Cir. 2017) (quoting 18 U.S.C. § 3582(c)(2)).

Liberally construing Mr. Cortes-Gomez's motion, he seeks compassionate release under § 3582(c)(1) and a reduced sentence based on a retroactive amendment—Amendment 821—to the Guidelines under § 3582(c)(2). The court discusses the merits of these requests, next.

### III.   Analysis[2]

The court begins at step one of the compassionate release analysis: Mr. Cortes-Gomez's list of six different extraordinary and compelling reasons. The court address each, in turn, below. The court then analyzes the § 3553(a) factors to determine whether they justify a reduced sentence. And it concludes with its analysis of Mr. Cortes-Gomez's request for relief under Amendment 821.

#### A.   Extraordinary and Compelling Reasons

##### 1.   Medical Needs

Mr. Cortes-Gomes first argues that his medical needs qualify as extraordinary and compelling reasons for compassionate release. Doc. 136 at 2. As relevant here, the Guidelines provide that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" qualifies as an extraordinary and compelling reason. U.S.S.G. § 1B1.13(b)(1)(B)(i) (2024). Or a defendant can show extraordinary and compelling reasons by demonstrating that he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(C).

---

[2] The government does not dispute that Mr. Cortes-Gomez has exhausted his administrative remedies with the Bureau of Prisons. Doc. 139 at 4.

Mr. Cortes-Gomez claims that prison officials have failed to treat several of his medical conditions: eyesight loss, an abnormal cyst, hemorrhoids, and high blood pressure. Doc. 136 at 2. He also asserts "that the medical [care] received from the B.O.P. falls short as adequate[.]" Doc. 140 at 3. He does not provide any more details. The government responds that it has reviewed Mr. Cortes-Gomez's medical records[3] and discovered that the prison either has treated these ailments or the ailments do not appear life-threatening. Doc. 139 at 10–11.

Because of Mr. Cortes-Gomez's bare-bones assertions, the court simply can't tell if Mr. Cortes-Gomez's medical conditions have substantially diminished his ability to care for himself in prison. Nor can the court tell if these conditions require long-term or specialized medical care. Even if the prison has failed to treat these conditions—which is not at all clear on this record—Mr. Cortes-Gomez has failed to show that lack of treatment risks serious deterioration in his health or his death. The "defendant carries the burden on a motion for compassionate release to show he is entitled to relief." *United States v. Crespin*, No. 23-2111, 2024 WL 3084972, at *5 (10th Cir. June 21, 2024) (collecting cases). And Mr. Cortes-Gomez has failed to shoulder his burden.

### 2. Family Circumstances

Mr. Cortes-Gomez asserts that he has three sons with medical needs, and they require his presence because his wife also has health problems. Doc. 136 at 3. Guidelines § 1B1.13(b)(3) imagines that some family circumstances will qualify as extraordinary and compelling reasons. And the Guidelines provide that the "death or incapacitation of the caregiver of the defendant's minor child" qualifies. U.S.S.G. § 1B1.13(b)(3)(A). The problem, though, is that Mr. Cortes-

---

[3] The government offered to provide the court with Mr. Cortes-Gomez's medical records upon request. Doc. 139 at 10. Mr. Cortes-Gomez has not given the court any reason to doubt the government's account of these records, so the court accepts the government's detailed recounting of their contents.

4

Gomez has not provided anything beyond his conclusory statements about his wife's health problems to support this ground. He also abandons this argument in his reply. *See generally* Doc. 140. The court thus can't find extraordinary and compelling reasons based on Mr. Cortes-Gomez's family circumstances.

### 3. Victim of Abuse

Mr. Cortes-Gomez next claims extraordinary and compelling reasons because he was a victim of abuse. Doc. 136 at 3. The Guidelines provide an extraordinary and compelling reasons category for defendants who were victims of sexual abuse or physical abuse while in B.O.P. custody. U.S.S.G. § 1B1.13(b)(4). Mr. Cortes-Gomez does not qualify because he alleges the abuse occurred when he had to flee his home country. He alleges nothing about abuse in prison.

### 4. Financial Hardship

Mr. Cortes-Gomez asserts, albeit in cursory fashion, that the financial hardship on his family qualifies as extraordinary and compelling reasons warranting his release. Doc. 136 at 3. The court can't agree. Nearly every defendant's family faces financial hardship from their incarceration; it is far from extraordinary.

### 5. Speedy Trial Act

Switching tactics, Mr. Cortes-Gomez argues that the court failed to apply the Speedy Trial Act correctly. *Id.* He raised an unsuccessful Speedy Trial Act challenge in his direct appeal. *See Cortes-Gomez*, 926 F.3d at 704–06. To the extent that Mr. Cortes-Gomez's Speedy Trial Act argument goes beyond the arguments made in his direct appeal and he argues that his sentence violates federal law or the Constitution, the court must reject it. Mr. Cortes-Gomez must bring any collateral attack seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See United States v. Wesley*, 60 F.4th 1277, 1282–86 (10th Cir. 2023)

(concluding defendant could not bring claim of prosecutorial misconduct under compassionate release statute because § 2255 controls attacks to conviction or sentence). And so any Speedy Trial Act issues don't warrant compassionate release.

### 6.     Unusually Long Sentence

Finally, Mr. Cortes-Gomez asserts that his "unusually long" sentence qualifies as an extraordinary and compelling reason for his release. Doc. 136 at 4. The court views this request from two angles.

Mr. Cortes-Gomez invokes the "Holloway Doctrine." Doc. 136 at 4. This nomenclature references *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. July 25, 2014). In *Holloway*, the district court called on the Department of Justice to reduce the defendant's 57-year-and-seven-month sentence, a sentence based in large part on stacking three 18 U.S.C. § 924(c) counts. *Id.* at 312–13. The government agreed to vacate two of the § 924(c) counts, and the district court "applaud[ed] the admirable use of prosecutorial power[.]" *Id.* at 311, 314–15. The Holloway Doctrine thus "undisputedly requires the consent of the government." *United States v. Armendariz Soto*, No. 07-20099-16-JWL, 2024 WL 1703603, at *3 (D. Kan. Apr. 19, 2024) (collecting cases); *see also Holloway*, 68 F. Supp. 3d at 316 ("[T]he authority exercised in this case will be used only as often as the Department of Justice itself chooses to exercise it, which will no doubt be sparingly."). The government has not consented to reducing Mr. Cortes-Gomez's sentence. What's more, the circumstances underlying *Holloway*—an unusually long sentence based on no-longer-applicable § 924(c) stacking—do not apply here.

*Holloway* aside, the Guidelines provide that when a defendant "received an unusually long sentence and has served at least 10 years of the term of imprisonment," then the court may consider certain changes in the law to determine whether a defendant has provided extraordinary and compelling reasons for release. U.S.S.G. § 1B1.13(b)(6). The court agrees with the

government that Mr. Cortes-Gomez did not receive an unusually long sentence. *See, e.g.*, *United States v. Brooks*, 717 F. Supp. 3d 1087, 1094 (N.D. Okla. 2024) (finding "435-month prison sentence . . . unusually long"); *United States v. Eads*, 749 F. Supp. 3d 1149, 1155 (D. Colo. 2024) (finding life sentence unusually long). Instead, Mr. Cortes-Gomez received a below-Guidelines sentence. Nor has Mr. Cortes-Gomez cited any changes in law that would lower his sentences; all of the authorities he cites are inapposite.[4] And so Mr. Cortes-Gomez hasn't shown that a change in law has created a gross disparity between his current sentence and the sentence he would receive if he were sentenced again today.

The court thus concludes that Mr. Cortes-Gomez has failed to establish extraordinary and compelling reasons for his release based on the length of his sentence. His other grounds for extraordinary and compelling reasons also fall short. That conclusion alone would be enough to

---

[4]    Mr. Cortes-Gomez first cites *United States v. Moreira*, No. 06-20021-01-KHV, 2024 WL 378032, at *2 (D. Kan. Jan. 31, 2024), where the district court granted a defendant compassionate release and reduced his life sentence—a much higher sentence than Mr. Cortes-Gomez's—to 292 months after the government conceded extraordinary and compelling reasons—something the government hasn't done here. Doc. 136 at 4. He next cites *United States v. Garcia Rodriguez*, 93 F.4th 1162 (10th Cir. 2024), where the Circuit overturned a conviction for insufficient evidence because there was no evidence that the defendant, a passenger in a car carrying methamphetamine, knew about the methamphetamine hidden in the car. Doc. 136 at 4. It's not at all clear how this case would help Mr. Cortes-Gomez here. And a sufficiency-of-the-evidence challenge sounds like fodder for a § 2255 motion, not a compassionate release motion. Mr. Cortes-Gomez then asserts that he would receive a lower sentence today because the "Kansas statute criminalizing possession with intent to sell controlled substances was broader than the [Guidelines] under attempted conduct." Doc. 136 at 4. In support, he cites *United States v. Madkins*, where our Circuit held that a prior Kansas conviction did not qualify as a predicate offense for a career-offender enhancement. 866 F.3d 1136, 1144–48 (10th Cir. 2017). But Mr. Cortes-Gomez did not receive a career-offender enhancement. *See generally* Doc. 95 (Am. PSR). To the contrary, the PSR calculated Mr. Cortes-Gomez's criminal history score at zero, so it is not clear how issues of Kansas law would lower his sentence. *Id.* at 16 (Am. PSR ¶ 85). In a final heave, Mr. Cortes-Gomez claims that the government failed "to differentiate meth mixtures[.]" Doc. 36 at 5. Again, this sounds like § 2255 fodder. And, in any event, the PSR differentiates between methamphetamine actual and methamphetamine mixture. Doc. 95 at 14–15 (Am. PSR ¶¶ 61–67). In Mr. Cortes-Gomez's cited authority, *United States v. Johnson*, the Seventh Circuit held that the district court plainly erred in assuming that five ounces of methamphetamine were pure, without any basis in the record for such an assumption. 94 F.4th 661, 663–65 (7th Cir. 2024). That's just not the case here.

7

deny Mr. Cortes-Gomez's motion, but the court nonetheless continues its analysis and considers the § 3553(a) factors, next.

**B.     § 3553(a) factors**

Even if Mr. Cortes-Gomez had presented extraordinary and compelling reasons for release, the § 3553(a) factors do not warrant relief. Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider the relevant sentencing factors identified in § 3553(a). *McGee*, 992 F.3d at 1042. Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3553(a).

The court notes that Mr. Cortes-Gomez has little criminal history and no one has raised concerns about his conduct in prison. Despite these positive personal characteristics, Mr. Cortes-Gomez committed a serious felony offense. He occupied a leadership role in a methamphetamine-trafficking network. Given his leadership role, he was responsible for a lot of the methamphetamine—enough methamphetamine for a base offense level of 38. Doc. 95 at 15 (Am. PSR ¶ 72). That, plus the enhancements, drove Mr. Cortes-Gomez's Guideline range into the sentencing table's stratosphere. The court nonetheless varied downward to avoid a sentencing disparity with his codefendants and concluded a 294-month sentence would serve the purposes of § 3553.

This conclusion remains true today. The 294-month sentence provides just punishment, promotes respect for the law, and reflects the seriousness of Mr. Cortes-Gomez's offense. And,

8

it should be said again, represents a variance below Mr. Cortes-Gomez's Guideline range. Mr. Cortes-Gomez's release date is a little less than 12 years away, so he's got quite a bit of time left to serve on his 24.5-year sentence. A reduction would lead to an insufficient sentence, which § 3553 does not allow the court to impose.

In sum, even if Mr. Cortes-Gomez presented extraordinary and compelling reasons for his release, his motion nonetheless would fail on the § 3553(a) factors. That ends the court's compassionate release analysis. It takes up the Amendment 821 request next.

### C.     Amendment 821

Mr. Cortes-Gomez's motion invokes, in cursory fashion, Amendment 821 to the Guidelines, and argues that he qualifies for relief. Doc. 136 at 6. Section 3582(c)(2) allows the court to modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[.]" "Section 3582(c)(2) plainly tells us a defendant must overcome three distinct hurdles before he may obtain a sentence reduction thereunder." *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017) (emphases omitted). The court need only consider the first hurdle here: "under the statute's 'based on' clause, the defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing. If not, the district court lacks jurisdiction over the defendant's motion and the motion must be dismissed." *Id.* Mr. Cortes-Gomez fails to clear this first hurdle because Amendment 821 does not lower his Guideline range.

Amendment 821 Part A lowered the criminal history points a defendant receives if he committed the offense "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." United States Sentencing Commission, *Amendment 821,* https://www.ussc.gov/guidelines/amendment/821 (last visited

9

Aug. 20, 2025). Mr. Cortes-Gomez did not commit his crimes while under a criminal justice sentence, so he never received any status points. Part A does not apply.

Amendment 821 Part B reduces the offense level for some defendants with zero criminal history points. *Id.* And Mr. Cortes-Gomez received zero criminal history points. Doc. 95 at 16 (Am. PSR ¶ 84). But, to qualify for Part B, the Guidelines require that "the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role)[.]" U.S.S.G. § 4C1.1(a)(10). Mr. Cortes-Gomez indeed received an enhancement under § 3B1.1 because he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" Doc. 95 at 15 (Am. PSR ¶ 75). And so Part B doesn't apply to him, either.[5]

In sum, the Sentencing Commission has not lowered Mr. Cortes-Gomez's Guideline range with Amendment 821, so the court lacks jurisdiction over this part of his motion. *C.D.*, 848 F.3d at 1289.

## IV.     Conclusion

Mr. Cortes-Gomez does not present extraordinary and compelling reasons for compassionate release. Nor do the § 3553(a) factors favor a reduced sentence. The court thus denies this part of Mr. Cortes-Gomez's motion. And Amendment 821 does not lower his Guideline range, so the court lacks jurisdiction to consider this relief. It dismisses this part of Mr. Cortes-Gomez's motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Cortes-Gomez's Motion for Compassionate Release (Doc. 136) is dismissed in part and denied in part.

**IT IS SO ORDERED.**

---

[5]     Even if Part B applied, the court would deny relief. To clear the third § 3582(c)(2) hurdle, "the defendant must convince the district court he is entitled to relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)." *C.D.*, 848 F.3d at 1289–90. As provided in the court's compassionate release analysis, the § 3553(a) factors do not favor relief. *See above* § III.B.

**Dated this 8th day of September, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
